A07A1262. HALILOVIC v. PENSKE TRUCK LEASING.
(651 SE2d 160)

JOHNSON, Presiding Judge.

On December 8, 2004, Penske Truck Leasing rented a trailer, which had previously been stolen and then recovered, to Sabahudin Halilovic. On January 13, 2005, Halilovic learned of the history of his rental when he was arrested in Illinois for receipt of stolen goods, namely the Penske trailer he was pulling when stopped by the Illinois Highway Patrol. On June 3, 2005, Halilovic filed a lawsuit against Penske in the State Court of Fulton County alleging Penske was negligent in leasing him the trailer without first taking steps to assure its recovery had been properly reported to law enforcement.

Halilovic contends that Penske knew the trailer had been reported stolen in November 2004, knew the theft had been reported to

---

law enforcement, and was aware the trailer had been recovered by a private wrecker service. Yet it failed to notify the proper authorities when it was recovered the same month. As a result, the trailer in question was still listed as stolen in the National Crime Information Computer (NCIC) when it was leased to Halilovic in December 2004. Penske's leasing of the trailer, Halilovic contends, constituted a breach of the duty of ordinary care to him as the lessee and was the proximate cause of the injuries he suffered when arrested and detained for 19 hours.

Penske filed a motion for summary judgment which was granted on September 18, 2006. Halilovic appeals, citing in his enumeration of errors that (1) the trial court committed reversible error by ignoring material issues of disputed fact regarding Penske's breach of duty to Halilovic, and (2) Halilovic's due process rights were infringed when neither he nor his counsel were given notice of a hearing on Penske's motion for summary judgment.

Summary judgment is proper when there is no dispute as to the material facts, leaving no genuine issue of fact and entitling the movant to judgment as a matter of law.[1] To obtain summary judgment, the movant needs only to point to a lack of evidence behind a single element of the plaintiff's claim.[2] In a negligence action, the plaintiff must show that (1) the defendant had a legal duty to conform to a standard of conduct raised by the law, (2) the standard of conduct was not met and the defendant therefore breached the duty, (3) the breach was the proximate cause of the plaintiff's (4) injury or damages suffered.[3] The legal duty of a bailor for hire when renting automobiles to the public is one of ordinary care.[4]

Questions involving negligence, especially those involving whether the defendant exercised ordinary care, are properly left to a jury.[5] Customarily in order for a motion for summary judgment to be granted in a negligence action, the case must be plain, palpable, and indisputable.[6] On appeal, the review of summary judgment is de novo, and we construe the evidence and all reasonable inferences derived from it, in the light most favorable to the nonmovant.[7]

Construed in favor of Halilovic, the evidence and reasonable inferences therefrom show that when he was stopped by the Illinois Highway Patrol on January 13, 2005, he presented the patrolman

---

[1] OCGA § 9-11-56 (c).

[2] *Cope v. Enterprise Rent-A-Car*, 250 Ga. App. 648, 649 (551 SE2d 841) (2001).

[3] Id.

[4] Id.

[5] *Lockhart v. Beaird*, 128 Ga. App. 7, 9 (195 SE2d 292) (1973).

[6] *Malvarez v. Ga. Power Co.*, 166 Ga. App. 498, 499 (304 SE2d 542) (1983).

[7] *Cope*, supra at 649.

with proper documentation showing he was in lawful possession of the trailer, including his rental agreement. However, because the trailer was listed in the NCIC as stolen, the patrolman arrested Halilovic until the matter could be straightened out. Nineteen hours later, after confirming with Penske in Atlanta that the previously stolen trailer had been recovered prior to December 8, Halilovic was released from jail.

The evidence in the record shows that the trailer in question was reported stolen by Kristy Petty, the comptroller at Lin Pac, Inc. d/b/a Eagle Containers, on November 1, 2004. On the morning of November 1, Petty was notified that the Penske trailer that Eagle Containers had been renting since February 2004 was missing from its lot in Fulton County. She testified that once she was alerted to the stolen trailer, she e-mailed Tara Worthington in the Atlanta Penske office to advise her of the situation. It was Worthington, according to Petty, who informed Petty that Eagle Containers needed to contact the local police to report the trailer stolen. In her deposition, Worthington denies receiving an e-mail from Petty regarding the stolen trailer on November 1, 2004. In fact, Worthington contends that no one at Penske in Atlanta was aware that the trailer was stolen until a week later when Penske was notified of its recovery by corporate headquarters.

Regardless of whether Petty received instruction from Worthington to call the police on November 1, she did in fact contact the Fulton County Police Department on that date concerning the stolen trailer. Fulton County dispatched an officer to Eagle Containers who filled out a police report from which the trailer was entered into the Georgia Crime Information Computer (GCIC) and NCIC as stolen.

By the time the trailer was entered into the GCIC and NCIC as stolen, it had already been recovered by a towing and wrecker service, Silent Night Recovery. In a letter to Penske corporate headquarters dated November 2, 2004, Silent Night informed Penske that this particular trailer had been in its possession since October 27, 2004. This letter was received by Penske headquarters in Reading, Pennsylvania on November 8, 2004 and was faxed to Tara Worthington at the Penske office in Atlanta on the same day.

According to Worthington, no one in the Atlanta Penske office was aware that the trailer was stolen until receiving this faxed letter on November 8, 2004 alerting them to the fact that Silent Night Recovery had recovered it. Thirty days passed between the time the Atlanta Penske office learned that the trailer had been stolen and recovered and the time it was placed back in inventory and rented to Halilovic. Another five weeks went by from the time Halilovic rented the trailer and the time he was arrested for towing a stolen vehicle. Thus, Penske had roughly 12 weeks to contact the Fulton County

Police Department to ensure the trailer was no longer listed as stolen in the GCIC and NCIC. According to Penske's own internal policies, upon recovering a stolen vehicle the necessary information, such as the vehicle identification number (VIN) and tag number, must be submitted to the police. Worthington, however, admitted that it was only after receiving Halilovic's phone call from jail that she contacted the Illinois Highway Patrol to let them know the trailer had been previously recovered.

The deposition of the Fulton County detective on the case confirms Worthington's statements. The detective, who was assigned to the case in November 2004, stated that it was the Illinois Highway Patrol who informed Fulton County that Penske had recovered the trailer sometime in late 2004. He then confirmed the recovery with Worthington on January 13, 2005 and noted in his report that he was never personally informed the trailer had been recovered or he would have made certain it was removed from the GCIC and NCIC. In fact, after learning of the trailer's recovery, he looked into all phone calls placed from Penske to Fulton County from November 1, 2004 through January 1, 2005 to make sure the failure to remove the trailer was not due to a lack of diligence on his part. During that time period, 17 calls were discovered and none was in reference to the stolen trailer.

Despite Worthington's statement that no one from the Atlanta office was aware of the trailer's recovery until November 8, 2004, Penske contends that someone from that office did attempt to contact the police regarding the recovered trailer on November 3, 2004. It points to a Computer Automated Dispatch (CAD) sheet from that date as evidence that the phone call was placed and therefore its duty to Halilovic was properly discharged. According to the deposition of a Fulton County police captain, the CAD sheet in question confirmed a call placed from the Penske office in Atlanta to 911 on the morning of November 3, 2004. However, the captain cautioned that the only information which could be derived from the CAD sheet with any certainty was that a 911 call from Penske was routed through the Fulton County dispatch — not the police department — requesting a VIN check on that date. He went on to state that the sheet did not indicate what vehicle the caller was requesting information on, or if it was in reference to the particular stolen trailer.

Having reviewed the record, we find that there are legitimate questions of fact regarding whether Penske failed to exercise ordinary care in protecting Halilovic from an unreasonable risk of harm. In the brief supporting its motion for summary judgment, Penske contended that it had fulfilled its duty to Halilovic by contacting the authorities on November 3, 2004. However, we find that there is ample evidence in the record from which a jury could conclude that Penske failed to notify authorities regarding the trailer's recovery.

The facts as to this element of the cause of action are therefore in dispute and cannot be resolved as a matter of law.

In addition to whether Penske's failure to notify authorities of the trailer's recovery constituted a breach of ordinary care, there also exist questions of fact regarding proximate cause. That is, there are questions as to whether the evidence shows that it was foreseeable that some injury would come from Penske's omission. In *Hertz Drive-Ur-Self Stations v. Benson*,[8] this Court held that in order for a party to be liable for his negligence, it is not necessary that he should have been able to anticipate particular consequences which ensued, but it is sufficient if in ordinary prudence he *might* have foreseen that *some* injury would result from his act or omission. It does not require the gift of hindsight to realize that if a vehicle is listed in a nationwide database as stolen, police would not only be actively looking, but would stop it on sight and detain the driver. In fact, Penske's own internal policies regarding such matters point to an awareness of the problems that could be caused by a failure to act appropriately.

Accordingly, we find there are material issues of fact in the record to support Halilovic's cause of action. Penske is therefore not entitled to judgment as a matter of law, and Halilovic is entitled to present his evidence to a jury to decide questions of fact. Because we are reversing the trial court's summary judgment ruling, we need not address the issue of Halilovic's due process right to notice of the hearing.

*Judgment reversed. Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 10, 2007.

*Cash, Krugler & Fredericks, David N. Krugler, Rodriguez & Associates, Richard N. Blevins, Jr.*, for appellant.

*Dennis, Corry, Porter & Smith, Ryan T. Strickland, Scott W. McMickle, Goldner, Sommers, Scrudder & Bass, Thomas E. McCarter*, for appellee.

---

[8] 83 Ga. App. 866, 875 (65 SE2d 191) (1951).